IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| **BARBARA LOVRETA, individually, and on behalf of all others similarly situated,**<br>3769 Dante Avenue<br>Memphis, TN 38128<br><br>Plaintiff,<br><br>v.<br><br>**PHH MORTGAGE CORPORATION d.b.a. PHH MORTGAGE SERVICES,**<br>c/o Corporation Service Company<br>2908 Poston Avenue<br>Nashville, TN 37203-1312<br><br>Defendant. | Case No. 20-cv-2914<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Barbara Lovreta, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services and states as follows for her Class Action Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Barbara Lovreta ("Plaintiff" or "Lovreta") is a natural person residing in Shelby County, Tennessee.

2. Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services ("Defendant" or "PHH") is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 1 Mortgage Way, Mount Laurel, NJ 08054.

3. PHH does business in the state of Tennessee and is licensed to do business in the state of Tennessee as a foreign corporation.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## RESPA AND REGULATION X

6. Congress enacted RESPA, in part, to ensure "that consumers throughout the nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). Since "Congress intended RESPA to serve consumer-protection purposes[,] RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012) (citations omitted).

7. RESPA was amended through the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—in part to add 12 U.S.C. § 2605(k) which imposed further obligations on servicers.

8. As amended, it is a violation of RESPA for a servicer to "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

9. Further, RESPA, as amended, requires servicers to respond to inquiries from borrowers seeking the identity and contact information of the owner or assignee of borrowers' mortgage loans within ten (10) business days. 12 U.S.C. § 2605(k)(1)(D).

10. Moreover, in January 2013, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, *et seq.* Regulation X became effective on January 10, 2014.

11. Regulation X further expanded servicers' obligations under RESPA because RESPA, as amended, makes it unlawful for a servicer to "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

12. Regulation X also imposed requirements upon servicers in responding to two new categories of correspondence from borrowers related to their mortgage loans; specifically, Requests for Information ("RFIs") and Notices of Error ("NOEs"). "The CFPB has made this clear in its official interpretation of the regulations: 'A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request.' 12 C.F.R. § 1024, Supp. I." *E.g.*, *Messina v. Green Tree Servicing, LLC*, 210 F.Supp.3d 992, 1007 (N.D. Ill. 2016).

13. Relative to RFIs, Regulation X provides that "a servicer shall comply with the requirements of this section for any written request for information from a borrower that includes

the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

14. 12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to an RFI by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

15. 12 C.F.R. § 1024.36(d)(2)(i)(A) provides that a servicer must respond to an RFI requesting the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan" "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays" after receipt.

16. The CFPB issued Official Interpretations to Regulation X, Supplement I to Part 1024 (the "Interpretations"). In relation to requests seeking the "identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan", the CFPB issued the following interpretation expressly providing the requirements for a proper response:

> **2. Owner or assignee of a mortgage loan.**
>
> i. When a loan is not held in a trust for which an appointed trustee receives payments on behalf of the trust, a servicer complies with § 1024.36(d) by responding to a request for information regarding the owner or assignee of a mortgage loan by identifying the person on whose behalf the servicer receives payments from the borrower. A servicer is not the owner or assignee for purposes of § 1024.36(d) if the servicer holds title to the loan, or title is assigned to the

      servicer, solely for the administrative convenience of the servicer in servicing the mortgage loan obligation. The Government National Mortgage Association is not the owner or assignee for purposes of such requests for information solely as a result of its role as the guarantor of the security in which the loan serves as the collateral.

ii. When the loan is held in a trust for which an appointed trustee receives payments on behalf of the trust, *a servicer complies with § 1024.36(d) by responding to a borrower's request for information regarding the owner, assignee, or trust of the mortgage loan with the following information, as applicable*:

    A. For any request for information where the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is not the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee. Assume, for example, a mortgage loan is owned by Mortgage Loan Trust, Series ABC-1, for which XYZ Trust Company is the trustee. The servicer complies with § 1024.36(d) by identifying the owner as Mortgage Loan Trust, Series ABC-1, and providing the name, address, and appropriate contact information for XYZ Trust Company as the trustee.*

    B. If the request for information did not expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: The name and contact information for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, as applicable, without also providing the name of the trust.

    C. If the request for information did expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held: *The name of the trust, and the name, address, and appropriate contact information for the trustee, as in comment 36(a)-2.ii.A above.*

Supplement I to Part 1024 (emphasis added).

17. Importantly, unlike "qualified written requests" submitted pursuant to 12 U.S.C. § 2605(e), RFIs do not need to relate directly to "servicing" to trigger the duties under Regulation X. The CFPB specifically addressed the "servicing" issue in its commentary on 12 C.F.R. § 1024.36(f): "While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, ***it does not limit information requests to those related to servicing***." 78 F.R. 10696, 10761 (emphasis added). Therefore, a servicer is required to respond to "any written request for information," and the scope of 12 C.F.R. § 1024.36(a) is not limited to "requests relating to servicing." *E.g.*, *Pollack v. Seterus, Inc.*, Civil Action No. 17-60475-Civ, 2017 U.S. Dist. LEXIS 202827, at *8-9 (S.D. Fla. Dec. 7, 2017); *St. Claire v. Ditech Fin. LLC*, No. 1:17-CV-03370-AT-JFK, 2018 U.S. Dist. LEXIS 219661, at *11 (N.D. Ga. Sept. 21, 2018).

18. Relative to NOEs, Regulation X provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

19. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to an NOE by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a phone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this

determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

## STATEMENT OF FACTS

20. PHH is a mortgage "servicer" as that term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(k). PHH is the current servicer of Plaintiff's and Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively referred to hereinafter as the "loans").

21. Plaintiff's and Class members' loans are each a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

22. As such, PHH is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

23. At all times relevant, Plaintiff's and Class members' loans were owned or held by securitized trusts ("Trusts") which were the *actual* owners or assignees of their loans.

24. Plaintiff and Class members each submitted one or more requests—as defined by 1024.36(a) and/or otherwise falling within the purview of 12 U.S.C. §§ 2605(k)(1)— seeking the identity and contact information of the owner or assignee of their loans from PHH (the "Inquiries").

25.  Plaintiff and Class members each submitted their Inquiries to PHH at the address, email address, and/or facsimile number PHH designated for receipt of NOEs and RFIs, pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(d), respectively (the "Designated Address").

26.  As noted above, RESPA, Regulation X, and the Official Interpretations required PHH to identify the *owner* of Plaintiff's and Class members' loans—*i.e.*, the Trusts—by name in response to the Inquiries.

27.  However, PHH failed to properly and fully identify the *owner* of Plaintiff's and Class members' loans—*i.e.*, the Trusts—in response to the Inquiries as expressly required by RESPA, Regulation X, and the Official Interpretations. Specifically, in response to each of the Inquiries, PHH provided Plaintiff and Class members with the name and contact information for the entity that acted as the "trustee" of the Trust, but failed to identify the Trust itself.

28.  Therefore, PHH failed to provide adequate written responses to Plaintiff's and Class members' Inquiries as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(D).

29.  As a result of PHH's failure to comply with RESPA and Regulation X, Plaintiff and Class members were each harmed because they incurred the expenses associated with sending their Inquiries—such as their time, postage, etc.—but they did not receive the information to which they were legally entitled under RESPA and Regulation X. Indeed, because PHH "failed to do that which it was obligated to do [under RESPA]" the time and expense associated with Plaintiff's and Class members' submission of the Inquiries to PHH "metamorphosed into damages." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *19 (S.D. Ohio 2015); *McMillen v. Resurgent Capital Services, L.P.*, 2015 WL 5308236, at *10 (S.D. Ohio 2015); *Dale v. Selene Fin. LP*, 2016 WL 6024580, at *3 (N.D. Ohio 2016).

30. Subsequently, Plaintiff and certain Class members—*i.e.*, members of the Subclass (defined below)—sent NOEs to PHH concerning PHH's insufficient responses to their initial Inquiries.

31. Had PHH adequately responded to Plaintiff's and Subclass members' Inquiries, Plaintiff and Subclass members would not have needed to send NOEs regarding PHH's failure to comply with its obligations under RESPA and Regulation X. As such, Plaintiff and Subclass members were further harmed by PHH's failure to adequately respond to their Inquiries, as it required them to incur the expenses associated with sending these subsequent NOEs—such as their time, postage, etc.

32. PHH's practice of failing to provide substantive responses to Inquiries is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X. Indeed, PHH's response to Plaintiff's Inquiry appears to be part of a form letter used for all similarly situated borrowers. For example, Plaintiff's counsel has received several of these insufficient responses from PHH relative to other clients of Plaintiff's counsel during the past year. Specifically, Plaintiff's counsel has received insufficient responses from PHH and sent notices of error regarding the same to PHH for at least four (4) clients with mortgaged properties in the state of Ohio and at least three (3) clients with mortgaged properties in the state of New Jersey.

33. Because many homeowners sending Inquiries are involved in defending against foreclosure or are seeking information related to available loss mitigation options, this conduct is extremely detrimental as it deprives these homeowners from having full knowledge of what entity their obligations are ultimately owed or what loss mitigation options to which they would be eligible for review.

34. Plaintiff and Class members are asserting claims for relief against PHH for breach of the duties owed to them, pursuant to 12 U.S.C. §§ 2605(k)(1) and 12 C.F.R. § 1024.36.

35. Plaintiff and Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for the claimed breaches, and RESPA provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTS RELEVANT TO PLAINTIFF LOVRETA

36. Upon information and belief, Lovreta's loan is owned by or is otherwise a part of a mortgage backed security (*i.e.*, a Trust) named ABFS Mortgage Loan Trust 2000-4 ("ABFS"). ABFS is the Trust that is the actual owner or investor of Lovreta's loan.

37. Lovreta, through counsel, sent an Inquiry dated May 6, 2020 to PHH via certified mail to the Designated Address (the "Lovreta Inquiry"). *See*, the Lovreta Inquiry, attached hereto as Exhibit 1.  The Lovreta Inquiry contained a request for the "identity, address, and other relevant contact information about the owner or assignee of the loan" as contemplated by 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d)(2)(i)(A).

38. On or about May 15, 2020, PHH sent a response to Lovreta's counsel stating that the "investor details" relative to Lovreta's loan were:

> The Bank of NY Mellon
> Attn: CT MBS Group
> 525 William Penn Place 7th Floor
> Pittsburgh, PA 15259
> Phone: 800.269.6776

(the "Lovreta Inquiry Response"). *See*, the Lovreta Inquiry Response, attached hereto as Exhibit 2.

39. Upon information and belief, the reference to "CT MBS Group" in the contact information of the "investor details" refers to a division of The Bank of NY Mellon ("BONY") that handles mortgage backed securities (*i.e.*, Trusts).

40. The entity PHH identified as the owner or investor of Lovreta's loan—BONY—is not the actual owner or investor of Lovreta's loan, but rather merely the trustee that collects payment on behalf of the actual owner or investor—ABFS.

41. Accordingly, the Lovreta Inquiry Response was insufficient to comply with 12 U.S.C. § 2605(k)(1)(D) and 12 C.F.R. § 1024.36(d), as it failed to identify the Trust on behalf of which BONY collects payments as expressly required under the Interpretations.

42. Since Lovreta did not receive the information requested through the Lovreta Inquiry, on June 10, 2020, Lovreta, through counsel, sent an NOE to PHH via certified mail to the Designated Address (the "Lovreta NOE"). *See*, the Lovreta NOE, attached hereto as <u>Exhibit 3</u>.

43. On or about July 1, 2020, PHH sent a response stating that the owner or investor of Lovreta's loan was:

> The Bank of New York Mellon, f/k/a, The Bank of New York as successor to JPMorgan Chase Bank, National Association as Indenture Trustee for Noteholders and the note Insurer of ABFS Mortgage Loan Trust 2000-4
> Address: Attn: CT MBS Group
>              525 William Penn Place 7th Floor
>              Pittsburgh, PA 15259

(the "Lovreta NOE Response"). *See,* the Lovreta NOE Response, attached hereto as <u>Exhibit 4</u>.

44. Based upon the Lovreta NOE Response, ABFS is the Trust that is the actual owner or investor of Lovreta's loan. However, this information was only provided in response to the Lovreta NOE—*i.e.*, in the Lovreta NOE Response—and was *not* provided in the Lovreta

Inquiry Response—*i.e.*, in response to the previously-submitted Lovreta Inquiry. As such, the Lovreta Inquiry Response was insufficient to comply with 12 U.S.C. § 2605(k)(1)(D), 12 C.F.R. § 1024.36(d), and the Interpretations.

45. Lovreta was harmed by PHH's failure to respond to the Lovreta Inquiry because she incurred costs relative to sending the Lovreta Inquiry—such as postage and attorneys' fees—but did not receive the information to which he was legally entitled pursuant to RESPA and Regulation X. Indeed, as noted *supra*, when PHH "failed to do that which it was obligated to do [under RESPA]" in response to the Lovreta Inquiry, the time and expense associated with Lovreta's submission of the Lovreta Inquiry "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

46. Had PHH properly responded to the Lovreta Inquiry, Lovreta would not have needed to send the Lovreta NOE to obtain the information to which he was legally entitled.

47. Lovreta was therefore also harmed by PHH's failure to respond to the Lovreta Inquiry because Lovreta incurred costs relative to sending the Lovreta NOE that she would not otherwise have incurred—such as postage and attorneys' fees—had PHH properly responded to the Lovreta Inquiry.

## CLASS ACTION ALLEGATIONS

48. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in the United States (1) who have loans for which a securitized trust or pool is the owner or investor, (2) whose loans are serviced by PHH, (3) who submitted to PHH an Inquiry seeking the information about the owner or assignee of their loans, and (4) to whom PHH did not identify the securitized trust or pool that was the owner of their loans in response to such Inquiry.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) the legal representatives, successors and assigns of any such excluded person; and (6) any person whose Inquiry did not expressly request the name or number of the securitized trust or pool *and* the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation was the owner of the loan or the trustee of the securitization trust in which the loan was held.

49. **Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities ("the Subclass"), defined as follows:

> All loan borrowers in the United States (1) who have loans for which a securitized trust or pool is the owner or investor, (2) whose loans are serviced by PHH, (3) who submitted to PHH an Inquiry seeking the information about the owner or assignee of their loans, (4) to whom PHH did not identify the securitized trust or pool that was the owner of their loans in response to such Inquiry, and (5) who sent an NOE to PHH to obtain a proper response to their Inquiry.
>
> Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; (5) the legal representatives, successors and assigns of any such excluded person; and (6) any person whose Inquiry did not expressly request the name or number of the securitized trust or pool *and* the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation was

the owner of the loan or the trustee of the securitization trust in
which the loan was held.

50.     **Numerosity and Ascertainability**: Upon information and belief, the Class is comprised of more than forty (40) members, such that Class is so numerous that joinder of all members is impractical. This conclusion is reasonable because as of March 31, 2020, Ocwen, the parent company of PHH, "serviced approximately $200 billion in unpaid principal balance ("UPB") of forward residential mortgages."[1] Moreover, due to the availability of mortgage-related assistance through the CARES Act and similar programs arising out of the COVID-19 pandemic depending primarily upon the owner or investor of borrowers' individual loans, it is expected that a higher percentage of borrowers than would be typical are seeking information as to the owner or investor of their loans through their mortgage loan services. The exact number of members in the Class is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

51.     **Commonality and Predominance:** All members of the Class have been subject to and affected by a uniform course of conduct; specifically, PHH refusing or otherwise failing to provide a proper response to borrowers' Inquiries by failing to identify the securitized trust or pool that is the owner or investor of their loans. There are questions of law and fact common to the proposed Class that predominate over any individual questions, including:

      a.    Whether PHH's responses to the Inquiries failed to comply with the requirements of RESPA and Regulation X;

      b.    Whether PHH's practice of failing to properly respond to the Inquiries is a sustained pattern and practice of noncompliance with RESPA and Regulation X;

---

[1] *See*, Ocwen Financial Provides Company Update, https://www.globenewswire.com/news-release/2020/04/03/2011357/0/en/OCWEN-FINANCIAL-PROVIDES-COMPANY-UPDATE.html, April 3, 2020 (last accessed December 8, 2020).

      c.      Whether Plaintiff and Class members suffered actual damages, and the measure and amount of those damages; and,

      d.      Whether Plaintiff and Class members are entitled to recover statutory damages.

52.    **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and Class members were denied a substantive response to which they were entitled because Defendant unlawfully failed to identify the *owner* of Plaintiff's and Class members' loans—*i.e.*, the Trusts—by name, and Plaintiff and Class members incurred damages as a result.

53.    **Adequacy**: Plaintiff will adequately represent the interests of the Class and does not have adverse interests to the Class. Plaintiff's counsel has extensive experience litigating consumer class actions.

54.    **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. Moreover, given the relatively small amount of damages available to Plaintiff and Class members, adjudication on a classwide basis would provide Class members with a remedy that they may be unlikely to pursue individually.

### COUNT I
**(Violations of 12 U.S.C. §§ 2605(k)(1)(C) and (E), and 12 C.F.R. § 1024.36)**
**(On behalf of Plaintiff, the Class, and the Subclass)**

55.    Plaintiff repeats and realleges paragraphs 1 through 54 with the same force and effect as though fully set forth herein.

56.    Plaintiff and Class members submitted Inquiries to PHH at the Designated Address.

57. Plaintiff's and Class members' Inquiries requested specific information related to their loans, specifically, the identity and contact information of the owner or assignee of their loans from PHH, as contemplated by, *inter alia*, 12 C.F.R. § 1024.36 and/or 12 U.S.C. § 2605(k)(1).

58. PHH failed to properly, or otherwise fully, identify the owner of Plaintiff's and Class members' loans in response to the Inquiries as expressly required by RESPA, Regulation X, and the Interpretations. Specifically, in response to each of the Inquiries, PHH provided the name and contact information for the entity that acted as the "trustee" of the Trust that was the *actual* owner or assignee of the loan, but failed to identify the Trust itself by name.

59. PHH failed to provide an adequate written response to Plaintiff's and Class members' Inquiries within ten (10) business days of receipt at the Designated Address—as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1).

60. PHH's failure to provide appropriate responses to Plaintiff's and Class members' Inquiries within ten (10) business days of receipt constitutes a clear violation of the requirements of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1).

61. Plaintiff and Class members were harmed because they incurred the expenses associated with sending Inquiries—such as their time, postage, etc.—but did not receive the information or responses to which they were legally entitled, pursuant to RESPA and Regulation X.

62. Plaintiff and Subclass members were further harmed by PHH's failure to respond to the Inquiries because they each incurred costs relative to sending an NOE that they would not otherwise have incurred—such as postage and attorneys' fees—had PHH properly responded to their Inquiries.

63. PHH is evading its legal obligations and has effectively stripped borrowers of their rights to submit Inquiries within and subject to the protective framework of RESPA, as PHH engaged in a pattern and practice of behavior of providing incomplete, evasive, or inaccurate information in response to such Inquiries.

64. PHH's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiff's and Class members' rights.

65. As a result of PHH's actions, PHH is liable to Plaintiff and Class members for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. §§ 2605(f)(2)-(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BARBARA LOVRETA, individually, and on behalf of the Class and Subclass, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and/or Subclass defined herein;

B. Designating Plaintiff as representative of the Class and Subclass, and her undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff, the Class, and Subclass and against Defendant;

D. Awarding Plaintiff, the Class, and Subclass their actual damages and statutory damages as allowed under RESPA;

E. Awarding Plaintiff, the Class, and Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

F. Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.

Dated: December 21, 2020

Respectfully submitted,

/s/ Brian D. Flick
Brian D. Flick (Ohio Bar No. 0081605)
Marc E. Dann (Ohio Bar No. 0039425)
Daniel M. Solar (*pro hac vice* anticipated)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
notices@dannlaw.com

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
tom@attorneyzim.com
Matthew C. De Re (*pro hac vice* anticipated)
matt@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

*Co-Counsel for Plaintiff Barbara Lovreta and the Putative Class*